[Civ. No. 25004. Second Dist., Div. One. Mar. 7, 1961.]

S. A. TURNER, Respondent, v. GEORGE ALLEN, Appellant.

Jerrell Babb for Appellant.

Lind & Schmitz for Respondent.

LILLIE, J.—This is an appeal by the defendant from a decree in equity setting aside and vacating a judgment by default obtained by him in an earlier action (which we shall refer to as the 1958 action) in the Superior Court of Los Angeles County. Previously the plaintiff herein had sought relief in the 1958 action under section 473 of the Code of Civil Procedure; the statutory time had expired, however, and relief was denied; he then instituted the present action and was granted the relief sought.

Certain background facts are without dispute: On or about July 14 of that year, the 1958 action was commenced; named as defendants therein were S. A. Turner, individually and doing business as Samson Electric Car Company. Turner employed Attorney C. George Deukmejian as his counsel, who seasonably filed a demurrer on behalf of his client in the capacities above stated; the demurrer having been sustained, an amended complaint was filed on September 5, to which a demurrer was again interposed on Turner's behalf in both capacities sued. On September 22, the demurrer to the amended pleading was overruled and Turner given 20 days to answer. On October 15, an answer and a cross-complaint were served and filed in the name of Samson Electric Car Company, Inc., a corporation in which Turner was the sole stockholder, no appearance thereafter being made for Turner individually and doing business as Samson Electric Car Company; an answer to the cross-complaint of the corporation was subsequently filed. Without notice to Turner, a request for the entry of his default, individually and doing business as Samson Electric Car Company, was filed on October 21 by Allen's then counsel; said default was thereafter entered on October 28, likewise without further notice to Turner or his attorney. Almost one year later, on October 6, 1959, Allen's present counsel filed a motion to strike the answer and cross-complaint of the corporation; on October 23, through present counsel, Turner appeared in opposition thereto. The motion to strike was granted and, as already stated, Turner subsequently sought without success to obtain relief under section

473 of the Code of Civil Procedure. The present action was commenced on December 7, 1959; while it asked that the "judgment" be vacated and set aside, the complaint was directed to the entry of Turner's default on October 28, 1958 —the actual default judgment, it appears, was entered on December 24, 1959, subsequent to the filing of the present action; the judgment from which this appeal is taken, however, not only ordered that the default be set aside and vacated but also decreed that the default judgment in the 1958 action be set aside and vacated and Turner given 20 days to answer.

Upon the trial, the file in the 1958 action was received by reference. Following the allegations in the complaint, Turner testified that he was not an attorney; that he took the papers (summons and complaint) to Mr. Deukmejian after service thereof upon him; testimony was then elicited from Turner bearing on the merits of his defense to the 1958 action: Briefly, he built an electric car for Allen pursuant to agreement, that as far as he knew the car had no defects when it was delivered to Allen, that the latter returned the car and stated that he had been in an accident, that he (Turner) repaired the car and did not hear from Allen again until the 1958 action was filed. Mr. Deukmejian stated that he dictated an answer to the first amended complaint in the 1958 action; he could not recall whether he dictated the words "defendant Samson Electric Car Company, Incorporated" or whether he simply said to his secretary, "This is the answer for Mr. Turner." He denied that he intended to enter an appearance for the corporation; on the contrary, he testified that he intended to answer for Turner in the same capacities as he had done on the two demurrers. According to Mr. Deukmejian, he received an answer to the corporation's cross-complaint, but otherwise had no communication from Allen's counsel until he received notice of the motion to strike in October of 1959.

The trial court found, in addition to other material findings, that "in dictating said answer to the first amended complaint said attorney, knowing the true legal entity of plaintiff, inadvertently and by mistake of fact and extrinsic accident, named Samson Electric Car Company, Inc. as the answering defendant and cross-complainant, but in fact and at all times meant to represent and answer for S. A. Turner individually and doing business as Samson Electric Car Company in the same manner as he had represented plaintiff on the demurrers and motion to strike"; also, "that the defendant knew the

corporation was not a party defendant or knew or should have known that the appearance in the name of the corporation was made through inadvertence and mistake and with a belief that on the part of plaintiff's attorney . . . he was appearing on behalf of S. A. Turner individually and d.b.a. Samson Electric Car Company''; ''that the defendant well knew that he had the default entered of the plaintiff but deliberately took no further action until long after the six months period had elapsed under section 473 of the Code of Civil Procedure . . . for the purpose of depriving our plaintiff from relief under section 473 . . . and he did thereby deprive our plaintiff of relief under said section,'' which ''conduct of said defendant in our present action constituted and was extrinsic fraud perpertrated [sic] upon our plaintiff.'' As a conclusion of law, it was concluded that ''the default of the plaintiff S. A. Turner individually and doing business as Samson Electric Car Company and the judgment thereon were obtained by our defendant through and by reason of extrinsic fraud . . .,'' no mention being made (as in the findings of fact) of ''extrinsic accident'' or ''mistake of fact.''

Appellant's assignments of error are three in number; in varying phraseology they challenge the sufficiency of the evidence to support the findings, particularly the conclusion of law therefrom that extrinsic fraud was alleged or established.

As his first proposition, appellant asserts that ''extrinsic fraud is the *only* ground for attacking in equity a final judgment of a court having jurisdiction over person and subject matter, if time for appeal or other direct attack has expired'' (emphasis added). Such is not the law. Rather recently, in *Galper* v. *Galper* (1958), 162 Cal.App.2d 391, 397 [328 P.2d 487], we had occasion to observe that '' 'extrinsic accident and mistake of fact' may, in some situations, be a proper basis for the exercise of the court's equitable jurisdiction to vacate a default judgment''; it was also there said that ''whether such a condition exists is a question of fact depending entirely upon the particular circumstances in each case.'' The ground for the exercise of this jurisdiction, of course, is that there has been no fair adversary trial at law. (*Caldwell* v. *Taylor*, 218 Cal. 471, 479 [23 P.2d 758, 88 A.L.R. 1194].) Accordingly, if there be substantial evidence to support the judgment below on either of the grounds alleged in the complaint (and found to be true in the findings of fact), it becomes immaterial that both of such

grounds were not referred to, or made a part of, the conclusions of law in view of our powers under section 956a, Code of Civil Procedure.

On the issue of extrinsic fraud, appellant argues that there was no showing that his former counsel owed respondent or his then attorney any duty of disclosure regarding the deficiency inherent in the answer to the amended complaint;[1] in his comments on this phase of the case, the trial judge indicated that appellant's attorney in the 1958 action might have exhibited some measure of professional courtesy by advising Mr. Deukmejian, immediately upon receipt of the pleading, of the error in question; indeed, the trial judge went further and declared, by signing appropriate findings to that effect, that the failure to do so was part of a plan to lull respondent into a sense of false security by "deliberately" failing to take any "further action until long after the six months period had elapsed under section 473. . . ." Part of the fraud charged seems to have been that the application for the entry of respondent's default was made without notice. "There is no requirement that notice be given of such an application" (*Taliaferro* v. *Bekin Realty Co.*, 176 Cal.App.2d 240, 242 [1 Cal.Rptr. 385]); as stated in that case, such fraud would be intrinsic and not extrinsic. Too, since section 473 requires that an application thereunder be made "within a reasonable time, in no case exceeding six months," and since the court would have been without jurisdiction to act thereon after the prescribed period (*Solot* v. *Linch*, 46 Cal.2d 99, 105 [292 P.2d 887]), it is difficult to understand why, if a fraudulent scheme had then been in being, almost six additional months were permitted to pass before the motion to strike the answer of the corporation was filed. We hesitate to say that the conduct of the attorney concerned was tainted with extrinsic fraud under the showing here made and as to which, significantly enough, respondent's brief has very little to say; we do so for the further reason that the judgment appealed from is sufficiently sustainable on other grounds.

As already pointed out, "extrinsic accident" and "mistake of fact" under appropriate circumstances will justify the intervention of equity to vacate a default judgment. Re-

---

[1]Appellant's reliance on *Greenwood* v. *Greenwood*, 112 Cal.App. 691 [297 P. 589] is misplaced; although, as there stated, equity will not afford relief where the judgment sought to be vacated was obtained as a result of the negligence of the party's attorney (unless caused by the opposite party), it appears that Mrs. Greenwood had already had two fair trials and was demanding a third trial.

spondent here was required additionally to plead and prove that a good defense existed to the original claim which would be likely to result in a favorable judgment if asserted in a new trial (*Wilson* v. *Wilson*, 55 Cal.App.2d 421, 427 [130 P.2d 782]), that he had a satisfactory excuse for not having made such defense in the 1958 proceeding and diligently sought relief after discovery of the facts (*Wilson* v. *Wilson, supra,* 427), and that his conduct in the premises in no way prejudiced the opposing party (*Soule* v. *Bacon,* 150 Cal. 495, 497-498 [89 P. 324].) █ The required pleading of the above matters was had in the case at bar; the sufficiency of the evidence was committed to the trial judge as the arbiter of the fact. As mentioned earlier, appellant produced no contrary testimony and it is useless for him to argue, as he does in his reply brief, that he will be prejudiced in the new trial as to any claim against the corporation by the asserted running of the statute of limitations—in this latter respect, we parenthetically observe that there is an *alter ego* aspect to this case, the respondent admittedly being the sole stockholder.

█ This brings us to the final point as to whether it can be said that respondent has not, as a matter of law, brought himself within the rule of such cases as *Hallett* v. *Slaughter,* 22 Cal.2d 552 [140 P.2d 3] and *Bartell* v. *Johnson,* 60 Cal. App.2d 432 [140 P.2d 878]. It has been said that "The practical effect of the *Hallet* case is that, if the aggrieved party makes a strong showing of diligence in seeking relief after discovery of the facts, and the judgment creditor is unable to show prejudice from the delay, the *original negligence in allowing the default to be taken* will be excused on a weak showing" (Witkin, California Procedure, pp. 2133-2134). Both *Hallett* and *Bartell* were mentioned by the trial judge in the course of the trial on the question of "extrinsic accident" and unquestionably influenced his decision; there is no serious contention that respondent did not act diligently (upon discovery of the facts), and we venture to say that the showing otherwise is at least no weaker than in those two cases; the majority holding in *Hallett* (which was followed in *Bartell*) is controlling here. █ The trial judge characterized respondent's mistake as in "the nature of a clerical mistake" on the part of Mr. Deukmejian or his secretary; drawing on his years of experience as a practicing attorney, "it still was the type of negligence that all of us who have practiced law have been guilty of at times when we have read over what has been dictated and the girl had written and we

failed to find that she had written something, or a word or two different than that which we had dictated.'' We conclude that the determination below, rationalized as above, may not be disturbed.

One thing more: No useful purpose would be served to reverse the case on the purely technical ground that the conclusions of law failed to make any reference to "extrinsic accident" or "mistake of fact"; from a reading of the record we know that the trial judge fully realized that such matters were crucial questions in the case—as a matter of fact, findings of fact were made to accord with his oral views with respect thereto, and it is clear that he would make the necessary conclusion of law if the case were remanded for that purpose.

The conclusions of law are ordered amended by adding thereto the following: "That the default of the plaintiff S. A. Turner individually and doing business as Samson Electric Car Company and the judgment thereon were obtained by our defendant through and by reason of extrinsic accident and mistake of fact."

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied March 29, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1961. Traynor, J., Peters, J., and Dooling, J., were of the opinion that the petition should be granted.