[Civ. No. 29014. Second Dist., Div. Three. Mar. 16, 1967.]

ANNA LIEBERMAN, Plaintiff, Cross-defendant and Appellant, v. AETNA INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.

516

Jack R. Berger for Plaintiff, Cross-defendant and Appellant.

Kinkle, Rodiger, Graf & Dewberry, Donald H. Dewberry and Eldon W. Bergstrom, Jr., for Defendant, Cross-complainant and Respondent.

FORD, P. J.—Having obtained a judgment by default against Lawrence Silberman for damages arising out of an automobile accident, the plaintiff sued the defendant Aetna Insurance Company, the insurer of the owner of the auto-

mobile driven by Silberman, to recover the amount of the judgment. By cross-complaint, Aetna sought to have the default judgment set aside. The trial court rendered judgment in favor of Aetna, and the plaintiff has appealed.

The findings of fact were in part as follows (stated in sequence) : 1. On August 24, 1960, Cinesound Company was the owner of an automobile which, while being operated by Silberman in the course and scope of his employment with Cinesound Company, was involved in an accident in which the plaintiff, Anna Lieberman, was injured. 2. Silberman was an additional insured under the policy of liability insurance written by Aetna. 3. He was served with a summons and complaint in the action brought by Mrs. Lieberman against him and Cinesound Company. 4. Silberman's default was taken, and a judgment dated September 7, 1961, was rendered against him and in favor of Mrs. Lieberman in the amount of $5,345.75, together with costs. That judgment was entered on September 11, 1961. 5. The failure ''to enter answer in behalf of Lawrence Silberman and default judgment taken against him was due to an extrinsic mistake of fact which prevented a presentation of defense in his behalf.'' 6. The plaintiff and cross-defendant ''willfully and with intent refrained from proceeding in her action to enforce the rights under the default until defendant and cross-complainant's rights were barred by lapse of time under Section 473 of the Code of Civil Procedure of the State of California and did lull defendant and cross-complainant into a false sense of security.'' 7. Silberman has a valid defense in the action brought against him by Mrs. Lieberman, ''but that due to the inability to present a defense in behalf of Lawrence Silberman in the action . . . defendant and cross-complainant Aetna Insurance Company has suffered injuries and damages by virtue of the judgment which it is obligated to pay by the terms of the policy covering their additional assured, Lawrence Silberman.'' 8. On August 30, 1960, Aetna knew that Silberman was an employee of Cinesound and was in the course and scope of his employment at the time of the accident. 9. Neither Aetna nor its agents knew of the service of the summons and complaint upon Silberman until after September 7, 1961. 10. Such lack of knowledge was not due to negligence on the part of Aetna or its agents. 11. On or about September 7, 1960, the attorney for Mrs. Lieberman knew that the interests of Silberman and Cinesound were the same with respect to the accident and that both were insured under a policy of liability insurance issued by Aetna to Cinesound.

12. On or about August 28, 1960, Aetna, acting through its attorneys, served and filed an answer on behalf of Cinesound in the action brought by Mrs. Lieberman in which answer it was denied that Silberman was driving the automobile with the permission of his employer, Cinesound, or that he was an agent acting in the scope of his employment at the time of the accident. 13. On or about November 1, 1961, Aetna, acting through its attorneys, filed a motion to set aside the default of Silberman, together with a proposed answer on behalf of Silberman wherein it was denied that he was driving the automobile with the permission of his employer or that he was in the course of his employment at the time of the accident.

In the judgment it was decreed that the default and the default judgment be vacated and set aside and that defendant Lawrence Silberman be allowed twenty days after the judgment in the present case should become final within which to plead in the action brought by Mrs. Lieberman against him.

It is necessary to review the evidence to determine whether there was any basis in fact for the equitable relief granted to Aetna. Ewald E. Mueller, called as a witness on behalf of Aetna, testified that he was formerly an employee of Aetna. A report of the anticipated claim of Anna Lieberman against Cinesound Company "came in in the usual manner from the agent." The agent was Beggs.[1] Mr. Mueller further testified: "Well, by that I meant the insured notified the agent; and the agent, in turn, notified the claim department of the Aetna Insurance Company." The original report was a brief letter dated December 21, 1960, from the agent enclosing a copy of the summons and complaint. He interpreted the letter as meaning that one summons was enclosed. His frame of mind was that only the named insured had been served; he had no knowledge of any other service. He sent the summons and the complaint to Aetna's attorneys with a letter dated December 22, 1960, stating that service had been made on Aetna's assured on an unknown date. At no time prior to September 7, 1961, did it come to Mr. Mueller's attention that service of the summons and complaint had been made upon Mr. Silberman.

[1] A later portion of Mr. Mueller's testimony was: "THE COURT: What authority or obligation or duty did Beggs have to receive a complaint and summons and transmit it to Aetna? THE WITNESS: Well, ordinarily your Honor, the accident report itself, for example, states to the named insured to report the matter to the agent, and the policy itself will state that a report of an accident or loss can be made to the agent or directly to the company."

On cross-examination Mr. Mueller said that the letter from Beggs did not designate upon whom the summons and complaint had been served. He knew that the caption and contents of the complaint referred to two defendants, Cinesound Company and Silberman. As he recalled, he called Beggs and ascertained that service had been made on the named insured.

It was stipulated that six days after the accident (which occurred on August 24, 1960) ''it was clear that Mr. Silberman was in the course and scope of his employment at the time of the accident,'' that the vehicle was owned by the named insured, and that ''obviously'' there was ''a policy coverage for the driver.''

Mr. Mueller further testified that after he learned of the default judgment he made inquiry of the Beggs office as to any letter of transmittal from the insured. Later an employee of that office told him that she had found a letter. That letter ''stated specifically that both the insured and the driver had been served, contrary to what the agent's letter of December 21 said.'' It was the letter which the insured sent to Beggs in transmitting the summons and complaint.

Jack R. Berger, Mrs. Lieberman's attorney, was called as a witness by the defendant and cross-complainant, Aetna, pursuant to the provisions of section 2055 of the Code of Civil Procedure. He testified that he had represented Mrs. Lieberman over a period of years. On the day of the accident, or within a few days thereafter, he was contacted by her husband. Mr. Berger called Cinesound for the purpose of obtaining a description of the car and the license number. When the action was filed he furnished two copies of the summons and complaint which were served on Cinesound and Mr. Silberman. Sometime before January 17, 1961, he requested the entry of default. Prior to that time Mr. Berger had two conversations with Mr. Nelson, a representative of Aetna, the first conversation being shortly after he had been contacted by Mr. Lieberman. The second conversation was either in October or November, 1960, before the action was filed. Prior to the taking of the default Mr. Berger did not advise Aetna, its agents or attorneys, that Mr. Silberman had been served. In response to an inquiry as to why he waited until six months after the entry of the default before he sought to obtain a judgment against Silberman, Mr. Berger said in part: ''I, in an attempt to answer your question, can say that one of the things I think that possibly was in my mind was the fact that you had an answer on file in which you denied that Silberman was in the course and scope of his employment; you

denied agency; you denied that he was driving with the permission of Cinesound.''

Mr. Berger further testified that in the period of six months after the entry of the default he was in contact with Aetna's attorneys: ''There was a deposition. There was a medical examination. There were interrogatories.'' The date of Mrs. Lieberman's deposition was March 2, 1961. At a later point in his testimony Mr. Berger said: ''In general fashion, counsel, I am aware of a custom among the attorneys in this area, where there is a default, to apprise opposing counsel of this fact. . . . May I add this: I think that this custom to which you make reference is a matter of courtesy.''

Dr. Robert L. Watson, Jr., called as a witness for Aetna, testified that he examined Mrs. Lieberman on behalf of the defendant in the personal injury action on February 4, 1961, the examination being as to her ears, nose and throat. He expressed the opinion that each of the matters of which Mrs. Lieberman complained was explainable by some cause other than the accident. He did not believe that the accident aggravated any pre-existing condition.

Roger W. Roberts, an attorney, testified in part as follows: ''Q. Will you tell us what is your testimony with respect to the custom and practice of attorneys waiting until the six-month period has elapsed, taking of defaults, and then not setting them aside, please. A. Until I walked in the courtroom yesterday, I had never had any experience at all with such a factor. Q. Would you say it is not the custom to do such a situation [sic]? A. Very definitely, as far as I know.'' He further testified: ''The custom certainly appears to be the immediate contact of the representative of a non-appearing party, either the attorney or the carrier, to determine why an answer has not been forthcoming within the time. . . . Well, either a direct communication by telephone, but usually in the form of a letter, with copies either to an attorney, if an attorney is present, or to the insurance company if one is known.''

Mr. Silberman was called as a witness on behalf of Aetna. He was involved in the accident on August 24, 1960, when he was driving a vehicle owned by Cinesound Company or Mrs. Green, who owned the Cinesound Company. As he approached the intersection, there was ''a light change,'' the car in front of him stopped, and so he ''had to stop.'' At that time he did not touch the other vehicle, the one in which Mrs. Lieberman was riding. Mr. Silberman described what there-

after happened: "After I had stopped, a motion picture camera, a Bolex in a leather case on the seat, dropped to the floor. Keeping my foot on the brake, I leaned over to set it upright on the floor. I decided at that very moment to let it remain on the floor, being a safer place for it, and I adjusted the camera on the floor. And as I adjusted the camera on the floor, I felt a contact of the vehicle with the vehicle in front of me. I looked up, and I was bumper to bumper with the vehicle in front of me." As to the nature of the impact, Mr. Silberman testified: "It was very light. There was a definite noise. I detected the noise and just the general feeling of a little contact at the moment." He observed no damage to either car. He was in the course and scope of his employment at the time. He spoke with Mr. Lieberman who indicated that his wife might be hurt.

Under questioning by the court, Mr. Silberman testified that he was served at the Cinesound office with a summons and complaint in the action brought by Mrs. Lieberman against Cinesound. He gave the summons and complaint to Mrs. Green, the owner of Cinesound Company. On the evening of the accident someone purporting to be the representative of Cinesound's insurance carrier contacted him. The next day he talked to Mr. Beggs. Shortly after that he talked to a Mr. Nelson who had previously talked to Mrs. Green. He did not recall anyone contacting him on behalf of Mrs. Lieberman prior to the time that her attorney told him that there was a judgment against him, except that on the day of the accident someone representing the Liebermans asked him for information about the car and, he believed, whether he was driving within the scope of his work. Mrs. Green asked for his copy of the summons and complaint and indicated that she would send it to the insurance agent immediately.

On further inquiry, Mr. Silberman said that in the telephone conversation on the day of the accident he was asked for the registration number of the vehicle. In that conversation he said that the vehicle was owned by Cinesound.

Mr. Berger resumed the stand on behalf of Mrs. Lieberman and gave further testimony. As to his conversation with Mr. Silberman on the day of the accident or shortly thereafter, his testimony was in part as follows: "In any event, because of the fact that there were evidently inaccuracies in the information given to me, I called Cinesound, and Mr. Silberman was put on the phone. At the time, I identified myself as the attorney for the Liebermans, and I indicated that I was interested in, as I recall it, the registration number and a physical descrip-

tion of the car . . . there was no statement made concerning the ownership of the car at that time.''

Mr. Berger further testified that before the entry of default he did not undertake any discovery proceedings.

Mr. Berger was subsequently permitted to reopen the case on behalf of Mrs. Lieberman, and he called Robert Beggs as a witness. Mr. Beggs testified as to a conversation with Mr. Nelson, an adjuster for Aetna, in which Mr. Nelson said that an error had been made in not defending the driver. Mr. Beggs further testified that he was confident that, in accordance with his office procedures, any summons and complaints which were received were sent to Aetna.

Eileen Harris, an employee of Mr. Beggs, was also called as a witness on behalf of Mrs. Lieberman. She said that she would have sent on to Aetna anything which she had received. The cross-examination by counsel for Aetna was as follows: ''Q. Ma'am, to the best of your recollection, the file was sent over, though, after the default had been taken, at which time Aetna first got the letter that noted the two summons and complaints; isn't that right? A. Yes, I presume so.''[2]

The gist of the matter appears to be that service of the summons and complaint was made on both Cinesound and Mr. Silberman, that the Begg's office (as permitted by the policy) was notified of such service but failed to make a clear communication of that fact to Aetna, that Aetna assumed that only the named assured had been served and failed to answer on behalf of Mr. Silberman, that Mr. Silberman's default was taken, and that Mrs. Lieberman's attorney did not disclose the fact of such default to Aetna until a period of six months had expired, although various proceedings, such as a medical examination and the taking of Mrs. Lieberman's deposition, occurred during that period with respect to the action. The primary question thus presented is whether there was mistake of such a nature that Aetna was entitled to equitable relief with respect to the judgment against Mr. Silberman which,

---

[2]The first paragraph of the letter dated December 19, 1960, from Cinesound Company to Robert Beggs (defendant's exhibit C) was as follows:

''Enclosed are two summons received from Anna Lieberman; one for Cinesound Company and the other for Lawrence Silberman. Presume you should handle this for us.''

The first paragraph of the letter dated December 21, 1960, from the Beggs office to Aetna (defendant's exhibit A) was as follows:

''We are enclosing a Summons #760535 for the claim referred to in Mr. Joseph Hobson's letter which we are returning herewith.''

under the terms of its policy, it would otherwise be obligated to pay.

By its cross-complaint Aetna sought to invoke the general equitable jurisdiction of the court which exists independently of any statutory provision. Relief from a judgment on the ground that the person adversely affected was deprived of a fair trial through extrinsic factors may be sought by means of a motion addressed to the court that rendered the judgment or, as in the present case, by resort to an independent suit in equity. (*Preston* v. *Wyoming Pac. Oil Co.*, 197 Cal.App.2d 517, 526 [17 Cal.Rptr. 443].) While Aetna was not a party to the action in which the judgment against Silberman was rendered, by virtue of its policy of insurance it was subjected to liability by reason of the rendition of that judgment. (See Ins. Code, § 11580.) Consequently, Aetna was entitled to equitable relief against the judgment if the requisite factual basis existed. (See Rest., Judgments, § 115, comment *f*.)

In *Weitz* v. *Yankosky*, 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700], an order setting aside a default judgment was before the court. The governing law as there set forth is applicable to an independent suit in equity to set aside such a judgment. The Supreme Court stated (pages 854-855) : ''A motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order. It is the policy of the law to favor, wherever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made. Stated another way, the policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. . . . As defendant's motion was made more than six months after the default was entered, it was not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473. [Footnote 1, and citations.] It was directed to the court's inherent equity power under which, apart from its statutory authority, the court has the power to grant relief from a default judgment where there

has been 'extrinsic' fraud or mistake.'' ▮ With respect to the factual situation in the *Weitz* case, the Supreme Court stated (page 856) : ''There is no showing that plaintiff was in any way prejudiced by defendant's failure to answer on time. Even if the mistake were caused by *some* negligence on defendant's part, this negligence might be excused if it in no way prejudiced the opposing party. [Citations.]''

In *Turner* v. *Allen*, 189 Cal.App.2d 753 [11 Cal.Rptr. 630], the defendant appealed from a decree in equity setting aside and vacating a default judgment obtained by him in an earlier action in the superior court. The prior action was brought against Turner individually and doing business as Samson Electric Car Company. An answer and a cross-complaint were served and filed in the name of Samson Electric Car Company, Inc., a corporation in which Turner was the sole stockholder. No appearance was made for Turner. Without notice to Turner, a request for the entry of his default was filed, pursuant to which the default was entered on October 28, 1958. In affirming the judgment granting relief to Turner the court stated (page 757) : ''As his first proposition, appellant asserts that 'extrinsic fraud is the *only* ground for attacking in equity a final judgment of a court having jurisdiction over person and subject matter, if time for appeal or other direct attack has expired' (emphasis added). Such is not the law. Rather recently, in *Galper* v. *Galper* (1958) 162 Cal.App.2d 391, 397 [328 P.2d 487], we had occasion to observe that ' ''extrinsic accident and mistake of fact'' may, in some situations, be a proper basis for the exercise of the court's equitable jurisdiction to vacate a default judgment;' it was also there said 'whether such a condition exists is a question of fact depending entirely upon the particular circumstances in each case.' The ground for the exercise of this jurisdiction, of course, is that there has been no fair adversary trial at law. [Citation.]''

In *Turner* v. *Allen* the court further said (189 Cal.App.2d, at pages 758-759) : ''As already pointed out, 'extrinsic accident' and 'mistake of fact' under appropriate circumstances will justify the intervention of equity to vacate a default judgment. Respondent here was required additionally to plead and prove that a good defense existed to the original claim which would be likely to result in a favorable judgment if asserted in a new trial [citation], that he had a satisfactory excuse for not having made such defense in the 1958 proceeding and diligently sought relief after discovery of the facts [citation], and that his conduct in the premises in no way

526

prejudiced the opposing party [citation]. . . . This brings us to the final point as to whether it can be said that respondent has not, as a matter of law, brought himself within the rule of such cases as *Hallett* v. *Slaughter*, 22 Cal.2d 552 [140 P.2d 3] and *Bartell* v. *Johnson*, 60 Cal.App.2d 432 [140 P.2d 878]. It has been said that 'The practical effect of the *Hallett* case is that, if the aggrieved party makes a strong showing of diligence in seeking relief after discovery of the facts, and the judgment creditor is unable to show prejudice from the delay, the *original negligence in allowing the default to be taken* will be excused on a weak showing' (Witkin, California Procedure, pp. 2133-2134).''

■■■ In the personal injury action, Cinesound's answer was filed on December 28, 1960. The default of Silberman was entered on January 17, 1961, and the default judgment was rendered on September 7, 1961, and entered on September 11, 1961. In the interim between the entry of the default and the rendition of the judgment against Silberman, discovery proceedings were had on behalf of Cinesound Company, including the taking of Mrs. Lieberman's deposition and a medical examination of her on behalf of the defendant Cinesound Company. Mrs. Lieberman's attorney said nothing as to the service of the summons and complaint on Mr. Silberman and the entry of his default for failure to answer. It is true that the answer on behalf of Cinesound Company contained a denial that Silberman was driving the vehicle in the course and scope of his employment or that he was driving with the consent of the owner, but the trial court was warranted in drawing the inference that, in spite of such pleading, Mrs. Lieberman's attorney, knowing of no coverage for Silberman except that which might be available under the Aetna policy, was looking to Aetna's policy for the satisfaction of the judgment against Silberman.[3] Thus, at the request of the clerk of the court, as a prerequisite to the rendition of the default judgment against Silberman, Mrs. Lieberman's attorney dismissed the action as

[3]Part of Mr. Berger's testimony was: ''Q. BY MR. DEWBERRY [counsel for Aetna]: You had indication before the default that Silberman was in the course and scope of his employment? A. I suspected that he was. Q. And you believed it, too, didn't you? A. I don't think I believed it. I would say that I certainly suspected very strongly that he was an employee of Cinesound. Q. Now, at the time that you dismissed against Cinesound, it was still your plan to collect this judgment from Aetna, wasn't it? A. I was interested in collecting the judgment, counsel. . . . By reason of the pleadings, I still had some doubts as to whether or not Mr. Silberman was in the course of his employment. I had no idea as to whether or not Aetna was going to claim any lack of cooperation, or

against Cinesound Company. Thereafter he wrote a letter to Aetna in which, after stating that the vehicle covered by its policy was registered in the name of Cinesound Company and was being operated by Mr. Silberman in the scope of his employment at the time of the accident, he further stated: "It would seem to me that, under the terms of your policy, you would be obligated to pay the above mentioned judgment." The present action to recover against Aetna was filed on October 9, 1961, and Aetna's cross-complaint was filed on November 30, 1961.

The evidence supported a determination that Mrs. Lieberman's attorney, knowing of the mistake consisting of a failure to file an answer on behalf of Silberman, lulled Aetna into a sense of security until the period for seeking relief under section 473 of the Code of Civil Procedure had elapsed (see *Solot* v. *Linch,* 46 Cal.2d 99, 105 [292 P.2d 887]), and then took a default judgment against Silberman in pursuance of a plan to assure recovery under the Aetna policy without a fair adversary proceeding. Apropos is the statement in *Hammel* v. *Lindner,* 224 Cal.App.2d 426, at page 435 [36 Cal.Rptr. 656]: "It is also to be considered, as an element of lulling respondent, . . . that appellant refrained from taking action on the judgment he had obtained by default until a few days after the six-month limitation of section 473 had expired. (*Hallett* v. *Slaughter,* 22 Cal.2d 552, 556 [140 P.2d 3]; *Bartell* v. *Johnson,* 60 Cal.App.2d 432, 437 [140 P.2d 878].)"[4]

---

assert any defenses. In all honesty, I must say that I felt that he was in the course and scope of his employment. On reviewing the file, when I noticed the answer filed by you, this gave rise to a doubt. I never did ascertain from Mr. Silberman himself anything concerning his employment until after the judgment had been entered, and that led, if I remember correctly, to the communication to Aetna. Q. But you were quite confident that the vehicle was owned by Cinesound, weren't you? A. Yes, I had ascertained that, I believe, in July. . . . Before the default judgment itself, yes." At a later point in his testimony, Mr. Berger testified as follows: Q. Now, then, again on our point, at the time you were dismissing against Cinesound and proceeding to take your default against Mr. Silberman, you were of the frame of mind that you were going to collect this judgment through Aetna, weren't you? A. I had in mind that this was a possibility. Q. Well, more than a remote possibility? A. I didn't say a remote possibility, counsel. . . . A. After I had talked to Mr. Silberman, I felt a lot stronger about it. Q. What I was talking about is, at the time you dismissed against Cinesound and proceeded with your judgment against Silberman, . . . it was your feeling that the probabilities were that you would be getting your money from Aetna; isn't that right? A. I would say that I felt there was a probability, yes. Q. That means more likely than not in your answer, doesn't it? A. Yes."

[4]As the trial court set forth in its conclusions of law, there was no legal duty on the part of Mrs. Lieberman or her attorney to advise Aetna

■ Mrs. Lieberman suffered no prejudice by reason of the failure to file an answer on behalf of Silberman on time. On the other hand, it is clear that, while the evidence indicates the probability of liability on the part of Cinesound Company and Silberman because of the accident, there is a substantial question as to the nature and extent of the injury suffered by Mrs. Lieberman. Consequently, there was a sufficient showing that it was reasonably probable that a trial on the merits would result in a judgment less favorable to her. (See *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540, 554 [305 P.2d 20]; *Hallett* v. *Slaughter*, 22 Cal.2d 552, 557-558 [140 P.2d 3].)

There was no abuse of discretion on the part of the trial court and the judgment must be affirmed unless there was prejudicial error because of matters to which we now turn.

■ Mrs. Lieberman contends that the trial court abused its discretion in overruling her demurrer to the first cause of action of the cross-complaint in which the relief sought was the setting aside and vacating of the default judgment. The argument is that in Aetna's verified answer filed in this case it was specifically denied that Silberman was an employee of Cinesound Company, or was operating the vehicle in the course and scope of his employment, or was an insured person as defined in Aetna's policy, or that Mrs. Lieberman had obtained a judgment against Silberman as alleged in the complaint, whereas in Aetna's unverified cross-complaint there were contrary allegations relating to those matters. It is Mrs. Lieberman's contention that, under the law, Aetna could not properly plead facts contrary to its verified allegations. While we do not condone falsity in pleadings or a failure to use proper care with respect to allegations in pleadings, it cannot be said that Mrs. Lieberman suffered prejudice inasmuch as the challenged portion of the cross-complaint set forth the particular facts in conformity with Mrs. Lieberman's position with respect thereto.

■ Mrs. Lieberman next contends that the court abused its discretion in denying her the right to trial by jury in the present case. That contention is untenable. On January 22, 1962, Aetna filed its demand for trial by jury. Beggs filed such a demand on February 25, 1964, and he deposited the required fees. In Mrs. Lieberman's pretrial statement dated February 17, 1964, it was asserted that Aetna's cross-complaint to set

of the service of the summons and complaint on Silberman or of the entry of the default. (See *Turner* v. *Allen, supra,* 189 Cal.App.2d 753, 758.) But, as noted hereinabove, the right to relief does not rest on any legal duty to so communicate.

aside and vacate the default judgment was "a collateral attack on the subject judgment, sounding in Equity, and consequently is not entitled to a trial by jury." In the pretrial conference order, however, the court ruled against that position and held that a trial by jury would be permitted, stating that "The court determines that cross-complainant is not proceeding on the cross-complaint in equity but on the basis of a duty owed by cross-defendant."[5] When the matter came on for trial both Aetna and Beggs waived trial by jury. Mrs. Lieberman then demanded a jury, but the court denied her motion. After the taking of evidence had been completed (prior to the subsequent reopening of the case for further evidence upon Mrs. Lieberman's request), the court clarified its position as follows: "THE COURT: I will make this statement at this time: In the event the court should rule that there is an estoppel here as against Aetna, this court will not deny Mrs. Lieberman a trial by jury on the factual issue of damages, if that is what you have in mind. I only denied your right to trial by jury as to equitable issues here, and if there is to be a further trial on the issues of damages, I think that your client is entitled to have that tried by a jury, if you so desire." The court further stated: "I don't think that from the statement of counsel and the stipulations in the record that there is any issue remaining under the complaint." Aside from the fact that Mrs. Lieberman's position prior to trial was in effect a waiver of any right to trial by jury (see *Lee* v. *Giosso,* 237 Cal.App.2d 246, 248 [46 Cal.Rptr. 803] ; *Taliaferro* v. *Hoogs,* 236 Cal. App.2d 521, 529 [46 Cal.Rptr. 147] ), the cause of action by which Aetna sought to set aside and vacate the judgment was clearly one for equitable relief and there was no right to trial by jury. (*Holt* v. *Parmer,* 106 Cal.App.2d 329, 332 [235 P.2d 43].)

 Mrs. Lieberman contends that the court abused its discretion by granting Aetna's motion to amend the pretrial order to include the issue of extrinsic mistake. It is true that the pretrial conference order made no specific reference to extrinsic mistake in the statement of the issues between Aetna and Mrs. Lieberman or in the statement of Aetna's contentions. But, as will be shown, that does not determine the matter. A pertinent portion of the record at the trial was as

---

[5]It is possible, of course, that the quoted statement was intended to be directed to the cause of action in Aetna's cross-complaint in which damages were sought from Beggs in the event Aetna was not successful in its effort to set aside the judgment against Silberman.

follows: "THE COURT: I am going to, at this time—I assume that the motion has been made to amend the pretrial statement if it requires amendment—and I must state it is not entirely intelligible to me—to include the issue of mistake. Now, if you [counsel for Mrs. Lieberman] feel you are prejudiced, I will entertain any motion that you may have at this time to reopen your case. . . . I will entertain any motion you want to put on additional evidence. If you desire to put on any additional evidence under those circumstances, you may do so." The court further said: "The motion is granted, and that issue [extrinsic mistake] is reinstated if it has ever been deleted. And I notice that there were some pen notations on the pretrial order—and I think it was on your pretrial order —in which that was scratched out."

There was no error. Section 576 of the Code of Civil Procedure is as follows: "Any judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading or pretrial conference order." A pretrial conference order does not do away with the power of a trial court to permit amendments to conform to proof. (*Texaco, Inc.* v. *Robinson,* 209 Cal.App.2d 450, 452 [25 Cal.Rptr. 923].) There was no abuse of discretion.

■■■ Mrs. Lieberman contends that certain findings of fact do not have support in the record. We have examined the designated findings in the light of the record and have found her contentions to be without substantial merit. It is true that the "finding" that the failure to file an answer on behalf of Silberman and the entry of the default judgment "was due to an extrinsic mistake of fact which prevented a presentation of defense in his behalf" partakes of the nature of a conclusion of law. The court did, however, find that Mrs. Lieberman willfully refrained from entering a default judgment until any right to relief from the default under section 473 of the Code of Civil Procedure was barred by lapse of time and "did lull" Aetna "into a false sense of security." While the findings of fact, as submitted to the trial court by counsel, could have been more artfully prepared, it is clear that the court found the facts in favor of Aetna on the issue of extrinsic mistake and that Mrs. Lieberman has suffered no prejudice because of any deficiency in the findings of fact as filed. (See *Schaefer* v. *Berinstein,* 180 Cal.App.2d 107, 124-125 [4 Cal.Rptr. 236]; see also *Auer* v. *Frank,* 227 Cal.App.2d 396, 406 [38 Cal.Rptr. 684, 8 A.L.R.3d

1108]; *Agair, Inc.* v. *Shaeffer,* 232 Cal.App.2d 513, 520 [42 Cal.Rptr. 883].)

The judgment is affirmed.

Moss J., and Shinn, J.,* concurred.

A petition for a rehearing was denied March 31, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1967.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.