United States Court of Appeals
For the First Circuit

No. 99-1026

MICHAEL FRANCO,

Plaintiff, Appellee,

v.

SELECTIVE INSURANCE COMPANY,

Defendant, Appellant.


NEW JERSEY MANUFACTURERS INSURANCE COMPANY,

Defendant.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Chief Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

Jon A. Haddow with whom Farrell, Rosenblatt & Russell was on
brief for appellant.
Daniel R. Mawhinney with whom Michael R. Bosse and Thompson &
Bowie were on brief for appellee.

July 14, 1999

BOUDIN, Circuit Judge. Michael Franco, the plaintiff in
this case, was injured in July 1994 when he fell from a skylight
while working at the Maine Mall in South Portland, Maine. After
unsuccessfully pursuing a workers' compensation proceeding, he
filed suit in September 1996 against, inter alia, "Staffco Inc."--
actually two different entities, Stafford Glass Co. and Staffco
Greenhouses, Inc.--and George Riker (a supervising employee). 
That suit was settled in January 1998. Franco then sued Selective
Insurance Company ("Selective"), Stafford Glass' general liability
insurer, giving rise to the present litigation.
Selective provided Stafford Glass Company with a general
liability insurance policy, several of whose provisions are
relevant here. First, the policy contained an exclusion indicating
that it would not cover claims for "bodily injury" to any employee
of the insured injured in the course of employment. Second, the
policy required the insured to notify Selective of any occurrence
that could result in a claim or of any claim or suit "as soon as
practicable." Staffco Greenhouses and Riker apparently had
derivative protection under the policy.
Franco's 1996 complaint alleged that he had been injured
in the course of his work for "Staffco, Inc." at the Maine Mall,
that the defendants had not appropriately "implement[ed] . . .
state and federal statutes concerning employment and safety
requirements," and that they had wrongfully denied him "workers'
compensation coverage and other state and federal protections
arising from and involving employment." He sought relief under
federal racketeering law, and for common law negligence, fraud,
intentional and negligent infliction of emotional distress, and
failure to procure workers' compensation coverage. 
Neither "Staffco, Inc.," Staffo Greenhouses, Stafford
Glass, nor Riker filed a timely answer to the original complaint. 
On October 29, 1996, the district court entered a default against
them. Fed. R. Civ. P. 55(a). On May 27, 1997, the defendants
moved to set aside the default, but the magistrate judge denied the
motion, finding both that the delay was unreasonable and that the
defendants had shown no good reason for their failure to answer the
complaint.
In December 1996, Franco's attorneys notified the
insurance broker of their lawsuit, who in turn notified Selective
on December 19, 1996. Selective did not join in the defendants'
later motion to set aside the default or intervene and file its own
motion. Instead, Selective filed suit in Maine state court seeking
a declaratory judgment that it had no duty to defend or indemnify
Stafford Glass or Staffco Greenhouses. The state court dismissed
the case when the current action was brought by Franco in federal
district court.
In January 1998, approximately six months after the
magistrate judge's decision declining to set aside the default,
Stafford Glass, Staffco Greenhouses, and Riker entered into a
settlement agreement and stipulated judgment with Franco. The
agreement and judgment awarded Franco $500,000, but included a
promise by Franco not to seek satisfaction of the judgment from any
of the defendants personally (except for $15,000 to be paid by
Stafford Glass up front). Instead, it assigned to Franco any
rights or claims of the defendants against Selective (and against
a workers' compensation carrier who later settled with Franco).
Franco then sued Selective in federal court. The claims
against Selective were for breach of the duty to defend and the
duty to indemnify, negligent claims handling, breach of fiduciary
duty, breach of the implied duty of good faith and fair dealing,
late payment, and unfair claims practices. In an amendment to the
complaint, Franco also added a cause of action under Maine's "reach
and apply" statute, 24-A M.R.S.A. 2904 (1990).
Selective moved for summary judgment on two grounds
pertinent here: first, that Franco was an employee injured on the
job, a claim specifically excluded from coverage under the
insurance policy, and, second, that Selective had been prejudiced
by not receiving notice of the suit until nearly two months after
default had been entered. Franco cross-moved for summary judgment,
on the grounds that Stafford Glass had been made liable to Franco
by the earlier consent judgment and that Franco was not in fact an
employee of Stafford Glass. Supporting affidavits offered by
Franco showed that Stafford Glass had not worked on the Maine Mall
project and that Franco was in fact employed by Staffco
Greenhouses.
On May 12, 1998, the magistrate judge filed a decision,
recommending summary judgment in favor of Franco. Under Maine law,
a duty to defend exists if the allegations of the complaint suggest
any legal or factual basis that would obligate the insurer under
the policy at issue. Gibson v. Farm Family Mut. Ins. Co., 673 A.2d
1350, 1352-53 (Me. 1996). The magistrate judge found that
Selective had breached this duty to defend Stafford Glass, and in
failing to defend had forfeited its right to contest its duty to
indemnify. The decision also rejected Selective's late-notice
defense for lack of proof of prejudice.
The district court agreed that Selective was liable under
the policy but on different grounds. It held that the employee
exclusion did not protect Selective because the undisputed facts
showed that Franco had not been employed by Stafford Glass; and it
rejected Selective's assertion that Franco was estopped from making
this showing. The court also apparently agreed that Selective had
not shown prejudice from the late notice. Since Selective
protected Stafford Glass under a general liability policy and no
exclusion or defense existed, the court held that Selective was
required to indemnify Stafford Glass for the consent judgment it
had suffered--a right of indemnification that had been assigned to
Franco.
Although the district court did not address the issue,
the parties apparently agreed that the consent judgment reflected
the proper amount of indemnification to the extent it was
"reasonable" and they agreed to submit the issue of reasonableness
to arbitration. Selective reserved the right to appeal only from
the denial of its motion for summary judgment and the granting of
summary judgment to Franco. The arbitrator awarded Franco
$524,900, based on the consent judgment and attorney's fees and
accumulated interest. Selective now appeals from the district
court's decision holding Selective liable; the amount is not in
dispute.
One of Selective's arguments on appeal is that Stafford
breached the notice provision in its insurance policy by not
informing Selective of the suit brought by Franco. Under Maine
law, a failure to give notice will only excuse an insurer if the
insurer--who bears the burden--can show that it was prejudiced by
the lack of notice. Ouellette v. Maine Bonding & Cas. Co., 495
A.2d 1232, 1235 (Me. 1985). The ordinary showing of prejudice is
a showing by the insurer of a possible defense against liability in
the original action against its insured and a further showing that
the delay in notice impaired its ability to assert that defense. 
E.g., American Home Assurance Co. v. Ingeneri, 479 A.2d 897, 902
(Me. 1984). 
Selective argues that prejudice is obvious: if it had
been informed before the default of the original Franco suit
against the insured, Selective could have taken charge of the
litigation and defended on the ground that (as the facts later
showed) Stafford Glass did not work on the Maine Mall project and
Franco was not its employee. This is a plausible contention,
although perhaps less certain than Selective assumes since Franco's
claims in the original lawsuit were various and the relationship
between the two companies remains obscure. Still, the question
remains whether Selective was prejudiced in asserting any such
defense by the delay in notice.
Although it might seem obvious that an entry of default
makes any defense more difficult, prejudice is a matter of degree
and Maine has held that entry of a default does not establish
prejudice as a matter of law. See Ingeneri, 479 A.2d at 901-02. 
In federal court, entry of a default is a step prior to entry of a
judgment of default and the default can readily be set aside for
good cause. Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989). 
Here, Selective says that the defendants themselves moved to set
aside the default and were rebuffed by the magistrate judge,
demonstrating that Selective would have been similarly treated if
it had sought to take over the defense when it first received
notice of the litigation in December 1996. 
But the defendants did not move to set aside the default
until June 1997 and only their neglect was held not excusable; it
is by no means apparent that the magistrate judge would have ruled
the same way if Selective had appeared in December 1996, cast as an
innocent insurer who had never been given notice, and asked only
two months after the default to set it aside and present a
colorable defense to the law suit. Cf. Lieberman v. Aetna Ins.
Co., 57 Cal. Rptr. 453 (Cal. 1967); 8 Appelman, Insurance Law &
Practice, 4860 (1981) ("[B]ecause [the insurer] would be bound by
a default judgment, it may be a proper party to have it set
aside.").
Who should bear the burden of the uncertainty created by
Selective's inaction? Maine law seems to answer the question by
putting the burden of showing prejudice on the insurer and
presuming strongly against such a showing. See Ingeneri, 479 A.2d
at 901-02. As we have said, prejudice is a matter of degree and
the matter would be different if a motion by Selective in December
1996 to remove the default were a long shot. But we think such a
motion, at least if made by Selective in a timely fashion, had a
good chance and that the requisite degree of prejudice required by
state law has not been shown.
Selective also argues that Franco is bound by judicial
estoppel to his assertion, in his original suit against Stafford
Glass, that he was employed by Stafford Glass. That position,
although it was potentially helpful to Franco's claims against
Stafford Glass in the original action, is arguably inconsistent
with his position in the present case. This is so because the
insurance policy (under which Franco claims as an assignee)
excludes from coverage claims by employees for "bodily injury," and
bodily injury was at least one of the injuries on which the
original complaint was premised.
The district court rejected the judicial estoppel
argument: it found that, as Stafford Glass' assignee, Franco was
allowed to take the position that Stafford Glass has consistently
taken throughout the litigation, namely, that Franco was not an
employee of Stafford. There seems to be little or no case law
involving judicial estoppel vis a vis the positions that may be
taken in litigation by assignees. The cliche that an assignee
"'stands in the shoes' of the assignor," Rhode Island Hosp. Trust
Nat'l Bank v. Ohio Cas. Ins. Co., 789 F.2d 74, 81 (1st Cir. 1986)
(quoting 10 Jaeger, Williston on Contracts 432, at 182 (3d ed.
1967)), mildly supports the district court's conclusion but is too
general to be conclusive, and we are not prepared to say that an
assignee is always free to take in that capacity positions that he
would be estopped from taking in his personal capacity.
But neither is judicial estoppel an automatic bar against
inconsistent positions. There are plenty of cases "where a party
is free to assert a position from which it later withdraws." 
Desjardins v. Van Buren Community Hosp., 37 F.3d 21, 23 (1st Cir.
1994). Although the doctrine has varied somewhat among the
circuits, see Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 12
(1st Cir. 1999), the First Circuit rule is that judicial estoppel
"should be employed when a litigant is 'playing fast and loose with
the courts,' and when 'intentional self-contradiction is being used
as a means of obtaining unfair advantage.'" Patriot Cinemas, Inc.
v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) (quoting
Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953).
"Unfair advantage" generally requires that a party have
"succeeded previously with a position directly inconsistent with
the one it currently espouses." Lydon, 175 F.3d at 12-13. Here,
it is not crystal clear that Franco's recovery against Stafford
Glass depended conceptually on proof that he was its employee; he
has suggested various ways in which recovery could be had under his
various claims in the original complaint even if Stafford Glass
were not his employer. One cannot know which theories would have
succeeded had the case gone to trial; but that is no fault of
Franco's. Selective has not carried its burden of proving unfair
advantage.
Selective also invokes res judicata, but neither of its
branches applies in this case. Merger or bar, now called claim
preclusion, is patently inapplicable. It applies only where the
cause of action and the parties are the same. See Aunyx Corp. v.
Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied,
507 U.S. 973 (1993). Here, putting to one side the fact that
Selective was not a party in the original action, the causes of
action are not the same: the original suit was a tort suit against
Stafford Glass and its co-defendants; the present suit is
effectively a contract action by an insured to assert a right of
indemnification under an insurance policy.
Nor does collateral estoppel, now called issue
preclusion, do Selective any good. Ignoring the party dimension,
collateral estoppel--a doctrine of efficiency--bars relitigation in
a second action only of issues actually litigated in an earlier
action. Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st
Cir. 1994). Here, the earlier action ended in a default and was
resolved only by a consent judgment: no issues were judicially
determined. Consent judgments may be given collateral estoppel
effect if the parties clearly intend issues to be settled for the
purposes of subsequent litigation between them, United States v.
Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996), cert. denied, 520 U.S.
1132 (1997), but this rests on agreement rather than efficiency and
there is no such agreement here. 
This case has several troubling features and none is more
troubling than the notion that Franco can collect indemnification,
on the theory that Selective is liable to Stafford Glass, for a
$500,000 consent judgment that cannot itself be enforced by Franco
against Stafford Glass (except in the amount of $15,000). If
Franco stands in the shoes of Stafford Glass by assignment, why can
he collect from Stafford Glass' insurer $485,000 that Stafford
Glass does not actually owe Franco? And yet nowhere on this
appeal, or apparently in the district court, has Selective argued
that the consent judgment should be treated, so far as
indemnification is concerned, as effectively only one for $15,000.
A review of the case law reveals that "covenants not to
execute" (as they are called) have not been found automatically to
preclude indemnification claims. See Glenn v. Fleming, 799 P.2d
79, 92 (Kan. 1990) (collecting cases). Although there may be some
backlash developing in certain states against "sweetheart" or
"sham" deals, see, e.g., State Farm Fire & Cas. Ins. Co. v. Gandy,
925 S.W.2d 696 (Tex. 1996), the majority of courts still accept
these arrangements, at least where the insurer has wrongfully
failed to provide a defense and the settlement was reasonable and
made in good faith. See Glenn, 799 P.2d at 92-93; Griggs v.
Bertram, 443 A.2d 163, 171-74 (N.J. 1982). Here, the arbitrator
found the amount reasonable and, in all events, the "pseudo-
judgment" issue with which we remain concerned has been waived and
we do not decide it.
Affirmed.