[Civ. No. 765.   Fifth Dist.   June 7, 1967.]

DIANE DESPER, a Minor, etc., et al., Plaintiffs and Appellants, v. JAMES L. KING et al., Defendants and Respondents.

Robert Burns Bostwick, Jr., for Plaintiffs and Appellants.

Ervin F. Vaughan for Defendants and Respondents.

STONE, J.—This is an appeal from an order setting aside a default judgment in favor of plaintiffs and against defendants, pursuant to a motion made more than six months after entry of default. The action arose out of a collision between a vehicle in which plaintiffs were passengers, and a truck owned by defendant Petroleum Tank Lines, Inc. and driven by its employee, defendant King. The accident occurred August 10, 1962. King reported the accident to his employer, who, in turn, notified its liability carrier, Truck Insurance Exchange.

Robert A. Brasfield, Supervising Claims Representative of Truck Insurance Exchange, testified that on August 23, 1962, he received a telephone call from Mrs. Desper, and the accident was discussed. Mrs. Desper told him no one in their car was injured. A property-damage-only file was set up. Mrs. Desper submitted estimates to Brasfield for car repairs, and a claimant's report dated August 27, 1962, which contained the statements: "All three passengers suffered soreness from whiplash. No serious injuries evident as of this stage."

On September 1, Mrs. Desper retained Robert Bostwick, Jr., an attorney, to represent her and her children. She advised Brasfield of this when she talked with him on September 4. Brasfield then called Bostwick's office and left word with the secretary that Truck Insurance Exchange, as liability insurance carrier, would be interested in discussing the Desper claims when medical reports and the amount of special damage were submitted.

Bostwick testified that he had several conferences with Brasfield about this case, as well as others pending in his office; that in November 1962 Brasfield made an offer of $2,800, which Bostwick recalled as including $1,500 for Mrs. Desper, $750 for one child and $250 for the other; that negotiations for settlement broke down when Brasfield advised him there would be no settlement and to go ahead and sue.

Brasfield testified that he had no recollection of discussing any settlement with Bostwick, nor any recollection of making a $2,800 offer of settlement. He stated that a personal injury file had been set up but because it had been misplaced or lost, the matter had not been placed on the insurance company's diary.

A complaint was filed in behalf of the Despers on July 10, 1963; service was made by the sheriff's office on defendant King on August 8, 1963, and on defendant Petroleum Tank Lines, Inc. on September 26, 1963. The default of defendants was entered December 30, 1963, and a default judgment entered against both defendants on February 26, 1965, awarding Mrs. Desper $9,785.56, David $775, and Diane $3,045.

On March 26, 1965, Bostwick advised Mr. Gray, President and General Manager of Petroleum Tank Lines, of the default judgment and of his intention to levy execution thereon to enforce collection.

Mr. Gray testified that he immediately called Truck Insurance Exchange and was referred to Mr. Hannegan, an attorney. Later Hannegan informed him there was a conflict of interest between the insurance carrier and Petroleum Tank Lines, and he should employ other counsel. Gray then engaged Mr. Vaughan.

On April 15, 1965, defendants filed a motion to vacate the default and set aside the default judgment, together with supporting declarations. By his declaration filed in support of the motion, Gray averred that Truck Insurance Exchange declined coverage under the cooperation clause of the policy and the company is assisting on this motion under a reservation of rights.

The declaration of defendant King recites that he was served on August 8, 1963; that he advised his former employer, Petroleum Tank Lines, that he had been served with process; that "I understood my employer, Petroleum Tank Lines, Inc., a corporation, would take care of everything in my behalf"; and that he had no information concerning the taking of default or the entry of the default judgment until March 1965.

Mr. Gray declared that during the months of August and September 1963 he was suffering from a serious illness which kept him away from the business for considerable periods of time; that he was unable to carry out his ordinary supervisory functions; that he had no recollection of having been served with process in the action; that when the corporation or any of its drivers was served with copy of summons and complaint in an action arising from an automobile accident, it was usual office practice to immediately send the same to Truck Insurance Exchange, which thereafter would handle the settlement or defense of such suit; that on March 26, 1965, he received a telephone call from Mr. Bostwick, advising him

of the default judgment, which came as a complete suprise to him since he was unaware that legal proceedings were in progress or outstanding; that thereupon he personally conducted an investigation of office personnel and records to determine what had happened to the complaint and summons, but such investigation failed to reveal what had occurred or to turn up the documents; and that he concluded the summons was accidentally lost or misplaced. He also pointed out that the reservation of rights on the part of the carrier may result in the corporation being required to pay the judgment if the default is not set aside.

At the hearing, Mr. Gray took the stand and expanded the averments contained in the declaration. He testified that he had been president and general manager of the defendant corporation for 20 years and that this was the only case in which papers had been lost; that he had diabetes and had been hospitalized for approximately three weeks in March or April 1963, and under a physician's care thereafter; that in August and September of that year he worked only part time, sometimes going down to the office for an hour; that Truck Insurance Exchange had carried the corporation's liability coverage for 12 to 14 years; that the normal routine was to give immediate notice to the carrier of the happening of any accident and to furnish immediately any process served upon the corporation or any of its drivers; that King had indicated to him that the employee had brought in his copy of summons and complaint but a thorough search of the premises failed to turn them up.

The declaration of Don Silker, a senior adjuster for Truck Insurance Exchange, recites that the records of the carrier reflect notice of the happening of the accident, but not that litigation resulted, and they contain no copy of the summons and complaint.

Defendants sought relief by a motion in the principal action to have the judgment set aside even though more than six months had elapsed from the entry of default.

■ *Olivera* v. *Grace*, 19 Cal.2d 570, 574 [122 P.2d 564, 140 A.L.R. 1328], makes it clear that after a lapse of six months an attack may be made on a default judgment, either by a separate equitable action or by a motion based on equitable grounds in the same action. This is not disputed by plaintiffs; rather, the thrust of their argument is that where relief is sought by motion more than six months after entry of default the grounds must be other than those set forth in

section 473 of the Code of Civil Procedure namely, "mistake, inadvertence, surprise or excusable neglect." Plaintiffs theorize that since section 473 limits to six months the time within which a motion can be made on these four grounds, it follows that a motion made after six months must be based on other grounds.

The courts have not imposed this limitation on either a motion or an independent suit in equity to set aside a default. For example, *Olivera*, which holds a motion will lie after six months have elapsed from entry of default, specifically recognizes *extrinsic mistake* as a ground for such hearing. In discussing the theory upon which such a proceeding rests, the Supreme Court said, at page 578: "We think it more accurate, however, to characterize such a situation as extrinsic mistake, which is a recognized ground for the intervention of equity where the mistake has prevented a fair adversary hearing."

In *Sternbeck* v. *Buck*, 148 Cal.App.2d 829 [307 P.2d 970], the defendant had moved to have his default set aside under Code of Civil Procedure section 473, on the grounds of excusable neglect and want of personal service of the summons. The court denied the motion, whereupon the defendant brought an action in equity to vacate the default judgment on the same grounds as those alleged in the motion. The reviewing court held that where relief under a section 473 motion is denied upon procedural or jurisdictional grounds, the order is not res judicata, and a subsequent action in equity predicated upon excusable neglect will lie.

Thus we have *extrinsic mistake* recognized as a ground for relief after six months, in *Olivera*, and *excusable neglect* similarly recognized in *Sternbeck*.

*Darlington* v. *Basalt Rock Co.*, 188 Cal.App.2d 706 [10 Cal.Rptr. 556], does not run counter to these cases. It is clearly distinguishable from *Sternbeck* in that the trial court in *Darlington* denied the original section 473 motion on the merits, not upon procedural or jurisdictional grounds. To the extent that the grounds for setting aside the default were litigated upon the merits in the section 473 proceeding, the ruling is res judicata in the subsequent equity proceeding.

That section 473 does not act as a six-months' statute of limitations as to the grounds of "mistake, inadvertence, surprise or excusable neglect," appears settled by the language of the Supreme Court in *Weitz* v. *Yankowsky*, 63 Cal.2d 849, at page 855 [48 Cal.Rptr. 620, 409 P.2d 700]: "As defend-

ant's *motion* was made *more* than six months after the default was entered, it was not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473. [Citations.] It was directed to the court's inherent equity power under which, apart from its statutory authority, the court has the power to grant relief from a default judgment where there has been 'extrinsic' fraud or *mistake*.'' (Italics added.) (See *Lieberman* v. *Aetna Ins. Co.*, 249 Cal.App.2d 515 [57 Cal.Rptr. 453]; *Shields* v. *Siegel*, 246 Cal.App.2d 334 [54 Cal.Rptr. 577].)

The *Weitz* case also defines the guidelines to be followed by a reviewing court where the trial court grants a motion to set aside a default judgment. ▆ There must be a clear showing of abuse, since the policy of the law is to have every litigated case tried upon its merits. *Weitz* reviews a number of situations paralleling the facts before us, in which default judgments were set aside. ▆ Defendant King, as did the moving party in *Weitz*, justifiably relied upon a third party to appear and defend him. King advised his corporate employer that he had been served with process. In today's employer-employee relationship it is customary for the employer to adequately protect himself and his employee with public liability insurance, and for the insurance carrier to provide a defense for both. It has become common practice for the employee to simply turn the matter of defense over to his employer.

Turning to defendant Petroleum Tank Lines, Inc., we find no abuse of discretion in setting aside the default. Mr. Gray testified that this was the only process lost during the 20 years he had been president and general manager, that he had been ill and was hospitalized for approximately three weeks, that he had been under a physician's care and was able to work only part time in latter 1963, that the same insurance company had furnished liability coverage for the corporation for 12 to 14 years, and that his normal routine was to give immediate notice to the carrier of the happening of any accident and to forward any process served upon the corporation or any of its drivers. Mr. Gray also testified as to his physical and mental condition, and was cross-examined on these matters.

By declaration, his doctor related that during the period in question Gray suffered from diabetes, that he was under great physical and emotional strain, that he "reached a point where

he was unable to concentrate on his business affairs and had periods of deep depression during which he considered self-destruction as a solution to his problem." The doctor concluded that Gray was unable to properly manage his personal and business affairs until March 1964.

Thus, if believed, the foregoing evidence is sufficient to support the order of the trial court. While it is true there is contradictory evidence and, as plaintiffs point out, the record does not cover every possible question that can be raised, nevertheless an abuse of discretion by the trial court is not manifest. Furthermore, it is the policy of the law to favor, wherever possible, a hearing on the merits. (*Viles* v. *State of California,* 66 Cal.2d 24, 29 [56 Cal.Rptr. 666, 423 P.2d 818]; *Weitz* v. *Yankowsky, supra; Beckley* v. *Reclamation Board,* 48 Cal.2d 710, 716 [312 P.2d 1098]; *Brill* v. *Fox,* 211 Cal. 739 [297 P. 25]; *Liberman* v. *Aetna Ins. Co., supra.*)

Plaintiffs attack the credibility of certain witnesses and the trial court's resolution of the conflicting evidence. On review of a judgment setting aside a default, the classic rules on appeal apply. ■ Judging the credibility of witnesses is the province of the trial court "whether the witness whose credibility is being judged gave his testimony orally or by way of affidavit." (*Ochinero* v. *Wertz,* 200 Cal.App.2d 533, 537 [19 Cal.Rptr. 466].) We find no abuse of discretion that would justify our setting aside the determination of these conflicts by the trial court.

The order is affirmed.

Conley, P. J., and Gargano, J., concurred.