[Civ. No. 986.    Fifth Dist.    Sept. 26, 1968.]

CLIFTON C. PALMER, Plaintiff and Appellant, v. FRED MOORE, Defendant and Respondent.

Dennis R. Scott for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers and Leo M. Fitzwilliam for Defendant and Respondent.

CONLEY, P. J.—The plaintiff, Clifton C. Palmer, appeals from an order setting aside a default of defendant and the judgment based thereon. The appellant claims generally that the superior court had no jurisdiction to act as it did, because the 6-month period between the entry of the default and the order setting it aside prescribed by section 473 of the Code of Civil Procedure had passed.

Under date of April 23, 1964, the plaintiff filed a complaint for damages against Fred Moore, doing business as the Jerri Club, alleging that the defendant maintained a public bar under the club name; that plaintiff was on the premises as a business invitee and as a patron and customer of the defendant on February 10, 1964; that at that time the defendant served alcoholic beverages to intoxicated persons and allowed drunken and unruly persons to remain upon the premises and failed to keep order in his establishment; it is claimed in particular that he allowed Doe Three to remain there, knowing him to be disorderly, unruly and a vicious person, and served alcoholic beverages to him when he was in an intoxicated condition; that because of said negligent careless and reckless conduct of Fred Moore the plaintiff ''. . . was wantonly assaulted and beaten by DOE THREE, by surprise and without provocation,'' and was struck by Doe Three about the head and face with a pool cue, thereby making the plaintiff ''nervous, sick, sore and disabled'' and with damage to his eyes and permanent partial loss of vision. The plaintiff alleged further that the defendant made no attempt to stop or prevent the assault or to call the police and that defendant refused to disclose to him the name of Doe Three, although he knew it. The complaint prayed for $20,000 general damages besides special damages, the exact amount of which was then unknown, together with $250 by reason of loss of employment.

The defendant filed an answer in which he denied the basic allegations of the complaint and alleged contributory negligence as a special defense.

In due course, the plaintiff served counsel for the defendant

with some 52 interrogatories and requested answers within 15 days, pursuant to section 2030 of the Code of Civil Procedure. No answers having been served or filed, counsel for the plaintiff wrote to the attorneys representing the defendant under date of February 23, 1965, asking whether it was their intention to secure answers to the interrogatories and if so when. Apparently, no reply was made to this letter. Counsel for the plaintiff then noticed a motion for the entry of a default against the defendant for May 19, 1965, pursuant to section 2034, subdivision (d), on the assumption that there had been a wilful failure to serve and file answers to the interrogatories. It appears from a declaration of respondent's counsel later filed in the case that on May 18, 1965, counsel for the two parties talked on the telephone about the motion and that the attorney for the defendant told the attorney for the plaintiff that he had been unable to contact his client and did not know where he was so that the failure to answer the interrogatories was not wilful; during this conversation, it was agreed that at the request of the defendant the matter of the motion for the entry of a default would be continued to May 26, 1965. Such a continuance was in fact made, but, due to alleged inadvertence on the part of a secretary on the staff of defendant's attorneys to make an entry of the continuance in the appropriate office calendar, counsel for the defendant did not appear at the hearing on May 26. In the declaration in support of the motion to set aside the court's order entering defendant's default, Mr. Leo M. Fitzwilliam, the senior member of the firm representing the defendant, made an affidavit containing the following: ". . . that although declarant was verbally notified on or about May 18, 1965 of the said date of May 26, 1965 for said hearing, said date of May 26, 1965 was not entered in declarant's office diary; that said failure to enter said date of May 26, 1965 in declarant's office diary was a result of inadvertence and mistake on the part of declarant and a breakdown in the customary clerical procedure in declarant's office; that declarant therefore inadvertently failed to appear at the time set for the hearing of plaintiff's said motion." Some of the case papers indicate that on the 18th of May, 1965, an affidavit of Mr. Fitzwilliam was filed in the office of the clerk of the court to the effect that counsel for the defendant had been unable to get in touch with the defendant, that the defendant had left California to go to Texas, that his insurance carrier had been unable to locate him and, therefore, that the failure to answer the interroga-

tories was not wilful. The clerk's filing mark shows May 19, 1965.

In the absence of defendant's counsel, the plaintiff alone was represented at the hearing on May 26, 1965, Fred Moore not being present in person or by attorney. The court ordered that the answer of Fred Moore be stricken and that a default be entered against him. On May 2, 1966, the court ordered a default judgment in favor of the plaintiff and against the defendant in the sum of $17,500 in damages, together with costs in the sum of $18.50.

Defendant's counsel had no notice of the entry of the default or the default judgment until they received a copy of the judgment from plaintiff's counsel on December 8, 1966. The law does not require that the person against whom a default or a default judgment is taken should be notified. But it is quite clear that, during the entire intervening period, plaintiff's counsel deliberately refrained from giving any notice, formal or informal, to the other side that a default or a judgment by default had been entered. (*Hallett* v. *Slaughter,* 22 Cal.2d 552, 556 [140 P.2d 3] ; *Hammel* v. *Lindner,* 224 Cal.App.2d 426, 435 [36 Cal.Rptr. 656].)

█ On the 11th day of January 1967, counsel for the defendant served plaintiff's attorney with a notice of motion to vacate the court's order entering defendant's default and reinstating defendant's answer. While there is no specific mention in the document that it presupposes the setting aside not only of the default but of the judgment based thereon, common sense and the authorities support the trial court's conclusion that the motion was applicable to both the default and the judgment; and we, too, shall so consider the matter (*Hammel* v. *Lindner, supra,* 224 Cal.App.2d 426, 429 ; *Brooks* v. *Nelson,* 95 Cal.App. 144 [272 P. 610] ).

In support of the motion, Leo M. Fitzwilliam filed a declaration that his firm, Fitzwilliam, Memering, Stumbos & DeMers, represented the defendant Moore and defendant's insurance carrier, Glens Falls Insurance Company, and that his firm had filed an answer for the defendant; that when he received the 52 interrogatories ''. . . declarant made every attempt to locate said defendant and learned that he had disposed of his business known as THE JERRI CLUB; that an extensive search for the defendant by Glens Falls Insurance Company failed to disclose the whereabouts of defendant except that Glens Falls was advised that defendant was some-

where in the State of Texas but was expected to return to the Sacramento area; tha the declarant advised attorney Dennis Scott, representing the plaintiff, that the interrogatories would be answered immediately if and when we were able to locate and interview the said defendant.''

Mr. Fitzwilliam also stated in his declaration that his failure to attend the court session of May 26, 1965, was the result of inadvertence and mistake ''and a breakdown in the customary clerical procedure in declarant's office'' in that one of the office staff, whose duty it was to do so, had failed to note on a calendar the date of the continued hearing. The declaration further stated on information and belief that the declarant thought that when the court made the order for the default judgment it was unaware of declarant's affidavit hereinbefore referred to, ''. . . reciting the impossibility of obtaining defendant's answers to plaintiff's interrogatories'' and the further belief of declarant ''. . . that if the court had been apprised of the impossibility of filing answers to the said interrogatories the court would have concluded that defendant's failure to answer said interrogatories was not wilful as required by section 2034(d) CCP.'' The declarant said that he had received no notice and had no knowledge during the six months immediately following the entry of the default and the default judgment that they had been entered. The declaration further stated, ''That on May 18, 1965, declarant by telephone explained to plaintiff's attorney why it was impossible to file answers to plaintiff's interrogatories and stated that if and when defendant could be located and interviewed said answers would be filed forthwith.'' It was later said that a private detective had located the defendant Moore since that time and that defendant was ready and willing to answer the interrogatories in due course if the default and judgment based thereon should be set aside.

A response to the motion to vacate the default and the judgment was filed on January 20, 1967, by Mr. Scott, in which he said that when he appeared in Department 2 of the court on May 26, 1965, and the defendant was not represented:

''The Court asked me whether I had had any communication from defendant's counsel. I told the Court that I had been telephoned, prior to the setting of the date of May 26, 1965, and that the change to the date of May 26, 1965, had been requested by defendant. I said that I understood that counsel for defendant intended to appear to argue the motion.

I said that defendant's counsel had communicated to me no facts which had a bearing on the merit of the motion other than those set forth in his affidavit in response to my motion, a copy of which he had mailed to me, and that I believed that the facts set forth in the affidavit did not constitute a defense to the motion. I pointed out that partial or complete answers to several of the Interrogatories must be available to counsel for defendant, even in the absence of defendant himself; For instance, Interrogatories numbers 22, 23, 25, 29, 31 and 34. Judge Gallagher told me that he had read the affidavits. He told me that he would grant an order striking defendant's Answer and entering a default, if I wanted such an order, and he said that such an order would not preclude the possibility that the insurance carrier might have a defense of lack of cooperation if I should come to sue them on a judgment in this action. I told him that I did want such an order, and he said that he would grant the order to strike the Answer and enter a default, but that he would not foreclose the issue of liability, and evidence would have to be presented at a default hearing to resolve the question of liability and the question of damages.

"The Declaration filed by counsel for defendant is mistaken in the conclusion that the affidavit filed on behalf of defendant on May 18, 1965, was not contained in the Court's file on May 26, 1965 when plaintiff's motion came on for hearing; and in the conclusion that the Court was not aware of the existence or the substance of said affidavit."

The record of the hearing after which the default and the default judgment were set aside shows that the court discussed the issue as follows:

"THE COURT: In reviewing this matter, in my own mind, it seems to me I was rather harsh in striking the answer and permitting the default.

"And assuming I did that, and apparently I did, it would seem to the Court that the Court would have assumed that the matter would have been brought to the other side's attention to give them the opportunity, of course, to appear, and a motion to set aside rather than to permit the matter to go to judgment after—after the period which would preclude them from doing anything about it.

"It just seems to me that I actually didn't follow the Law, because that section requires wilfulness."

This is not a proceeding based on mistake or excusable

neglect under Code of Civil Procedure section 473. More than six months after the entry of the default and the default judgment elapsed before the defendant's counsel were aware of what had happened. ▮▮▮ The motion was ". . . directed to the court's inherent equity power under which, apart from its statutory authority, the court has the power to grant relief from a default judgment where there has been 'extrinsic' fraud or mistake." (*Weitz* v. *Yankosky,* 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700].) (See also: *Hallett* v. *Slaughter, supra,* 22 Cal.2d 552, 557; *Olivera* v. *Grace,* 19 Cal.2d 570, 574-575 [122 P.2d 564, 140 A.L.R. 1328]; *Hill* v. *Johnson,* 194 Cal.App.2d 779, 781-782 [15 Cal.Rptr. 236]; *Corey* v. *Weerts,* 214 Cal.App.2d 416, 422-423 [29 Cal.Rptr. 533]; *Bartell* v. *Johnson,* 60 Cal.App.2d 432 [140 P.2d 878]; *Soule* v. *Bacon,* 150 Cal. 495 [89 P. 324]; *Galper* v. *Galper,* 162 Cal.App.2d 391, 397 [328 P.2d 487]; *Crane* v. *Kampe,* 225 Cal.App.2d 200, 204 [37 Cal.Rptr. 220]; *Lieberman* v. *Aetna Ins. Co.,* 249 Cal.App.2d 515, 524-525 [57 Cal.Rptr. 453].)

The basic contention made by appellant that the court had no jurisdiction to grant the relief afforded by reason of the fact that the 6-month period provided in section 473 of the Code of Civil Procedure had expired is shown to be without foundation by the above-mentioned cases. The court unquestionably had jurisdiction to grant the relief afforded. In *Corey* v. *Weerts, supra,* 214 Cal.App.2d 416, 422, it is stated: ". . . fundamental rules are that the lower court's discretion in granting relief from default will not be disturbed except for manifest abuse; the remedial power of the lower court to grant relief from default should be freely exercised to carry out the policy in favor of trial on the merits; a reviewing court is more disposed to affirm an order granting relief from default when the result is to compel trial on the merits than it is when the judgment by default is allowed to stand; a motion for relief from default based on extrinsic mistake or extrinsic fraud is addressed to the lower court's sound discretion; extrinsic fraud that deprives an adversary of fair notice of a hearing may exist although it was accomplished by mistake; actual fraud is not required; in cases in which the aggrieved party is unable to make out a case of intentional fraud, the courts on motion will extend a liberal interpretation to relieve him from a judgment taken without a fair adversary hearing; the basis for equitable relief from a judgment, whether it be denominated 'extrinsic fraud' or 'extrinsic mistake,' is that which has resulted in a judgment taken

under circumstances of unfairness and injustice without affording a party the opportunity to participate in the proceedings; and, on appeal, the burden of showing abuse of discretion or error rests on the appellant.''

Among the factors considered by the trial court was the failure of a secretary in the law offices of counsel for defendant to note in the diary of the attorney in charge of the defendant's case that the hearing had been continued to May 26. Such a failure may be excusable. As is said in *Benjamin* v. *Dalmo Mfg. Co.*, 31 Cal.2d 523, 527 [190 P.2d 593] : ''. . . whether or not it was 'excusable' was primarily a question for the trial court's discretion [citing case], particularly as related to her employee status. Factual situations generally similar to the present case in that they involved an erroneous filing in the office either of the defendant corporation [citing case] or of the attorney [citing case] have been deemed sufficient explanation for failure to make a seasonable appearance in defense of an action.''

It can be deduced from the record in this case that the trial court thought that Mr. Fitzwilliam's absence was excusable, but even if there was some negligence on the part of defendant's counsel the negligence might be excused if it did not prejudice the opposing party. (*Benjamin* v. *Dalmo Mfg. Co.*, *supra*, 31 Cal 2d 523, 531; *Hallett* v. *Slaughter*, *supra*, 22 Cal.2d 552, 556-557; *Weitz* v. *Yankosky*, *supra*, 63 Cal.2d 849, 856.) In the instant case there was no showing by plaintiff that the granting of the order setting aside the default and the default judgment and the consequent requirement of a trial of the case would be prejudicial to the plaintiff. We may assume that it was disappointing to the plaintiff to have his judgment for $17,500 and costs set aside, but there was no showing that a delay of the trial of the case on its merits would be prejudicial to him.

It is not contended that the defendant delayed inequitably in moving to set aside the default and the default judgment after receiving his delayed information concerning the entry of the default.

It should be noted that there was evidence of a strong character that Mr. Fitzwilliam advised Mr. Scott by telephone on the 18th of May that the defendant could not be located and had left the state, and that, consequently, his failure to answer the interrogatories was not wilful. And the section in question requires, before there can be a default, that such failure must be wilful (Code Civ. Proc., § 2034, subd. (d)).

Notwithstanding the evidence on behalf of respondent that a reputable attorney representing an adverse party had told him of the factors which showed that the failure of the defendant to answer the interrogatories was not wilful, Mr. Scott, nevertheless, saw fit to state to the court that the default was wilful, and for six months after the entry of the default judgment counsel for the plaintiff did nothing to advise the defendant's attorneys that such a judgment had been entered.

One of appellant's arguments is that the court, in setting aside the default, was attempting to correct a previous judicial error in concluding that the defendant had wilfully refused to answer the interrogatories, but it is fairly deducible from the record that the actual issue warranting the court's relief order was the excusable failure of defendant's counsel in failing to attend the court session of May 26, 1965.

In *Waybright* v. *Anderson,* 200 Cal. 374, 377 [253 P. 148], it is said: ". . . it may be stated that the authorities uniformly declare that a motion to set aside a default judgment is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse in the exercise thereof an appellate court will not disturb the order of the court below. [Citing Cases.]

"Moreover, it is the policy of the law to favor, wherever possible, a hearing on the merits and appellate courts are 'much more disposed to affirm an order when the result is to compel a trial upon the merits than it is when the judgment by default is allowed to stand, and it appears that a substantial defense could be made.' [Citing cases.] This is clearly indicated in the case of *Berri* v. *Rogero,* 168 Cal. 736, 740 [145 P. 95, 97], wherein it is stated that 'The policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. . . . A broad discretion is allowed to courts in granting relief, against default, and it is in cases only where the lower court has abused its discretion that the appellate court will reverse its action.' " (See also *Crane* v. *Kampe, supra,* 225 Cal.App.2d 200, 204-205.)

It is our conclusion that the trial court had jurisdiction to set aside the default and the judgment based thereon and that its action cannot be legitimately overturned. No

abuse of discretion has been shown. (*Hammel* v. *Lindner, supra,* 224 Cal.App.2d 426, 435; *Desper* v. *King,* 251 Cal.App. 2d 659, 665 [59 Cal.Rptr. 657]; *Orange Empire Nat. Bank* v. *Kirk,* 259 Cal.App.2d 347, 352 [66 Cal.Rptr. 240].)

The order is affirmed.

Stone, J., concurred.

A petition for a rehearing was denied October 25, 1968, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1968. Traynor, C. J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.