[Civ. No. 28972. Fourth Dist., Div. One. May 30, 1984.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
GWENDOLYN ALOHA MAGRI, Defendant and Appellant.

---

**COUNSEL**

Constance C. Phipps and George W. Coulter for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Keith I. Motley and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COLOGNE, J.**—Gwendolyn Aloha Magri appeals a May 9, 1983, order of the San Diego County Superior Court denying her motion to vacate an order by default made March 24, 1982, requiring her to pay $200 per month to San Diego County as partial reimbursement for public assistance provided her two children pursuant to the aid to families with dependent children program (AFDC). She also appeals the May 9, 1983, order's setting arrearages and denying her a change of venue.

On February 3, 1982, the County of San Diego (County) filed a complaint under Welfare and Institutions Code[1] section 11350 against Magri to require her to reimburse the County for public assistance expended for the support of her two children under AFDC while in the care of a paternal relative in San Diego County.

Concurrently with the complaint, the County filed an order to show cause for child support and application for order and supporting declaration. The declaration alleged Magri's gross monthly income to be $1,000. The hearing on the order to show cause was set for March 24, 1982.

On February 10, 1982, Magri, a San Mateo County resident, was served in San Mateo County with summons and complaint as well as the order to show cause, the application for order and supporting declaration, and a responsive declaration to order to show cause.

Magri never filed an answer to the complaint or a responsive declaration to the order to show cause. She failed to appear at the hearing on March 24, 1982.

The trial court entered an order taken by default requiring Magri to pay support in the amount of $100 per month per child, for a total of $200 per month, effective April 1, 1982.

After retaining new counsel in January 1983, Magri filed a motion in March 1983, to vacate the order by default for child support nunc pro tunc and for change of venue. The noticed motion was set for May 9, 1983. On May 9, Magri filed an income and expense declaration "retroactively" for March 22, 1982, reflecting her income to be only $338 in disability from workers' compensation and her husband's average monthly salary to be $2,389. Magri also filed a "current" May 9, 1983, income and expense

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

declaration reflecting a combined monthly average income for Magri and her present husband of $1,800.

At the May 9 hearing, the trial court denied her motion to vacate the March 24, 1982, child support order and to change venue. The court, however, modified the child support order. Based on a finding Magri had no present ability to pay either ongoing support or amounts of arrearages, the court reduced the current child support payments to zero, set arrearages through April 30, 1983, at $2,525, issued no order as to repayment of arrearages but directed Magri to notify the County of any change of income. Thus, Magri was ordered to pay nothing, past or present, in the proceeding here under review.

From uncontradicted declarations received in evidence by the trial court at the May 9, 1983, hearing, the following facts appear:

On January 24, 1974, the Superior Court of San Mateo County awarded Magri custody of her two children by Mr. Speers, her former husband, and ordered Speers to pay child support of $300 per month. The children were then approximately four and one-half and three years of age. Speers never paid any child support. In February 1977, Speers took the children from Magri and they disappeared. In late 1980, Magri discovered the children had been living out of state with the relative who is the complaining witness in this case. When Magri located the children, the relative did not want to relinquish them to her and the children were uncertain about leaving the home of the relative. Magri has since become physically and financially unable to care for the children, and the relative receiving AFDC has cut off all contact between Magri and the children. The whereabouts of the children's father is unknown to Magri.

In March 1981, Magri was injured on the job. She was unable to work and began receiving temporary disability payments. When she was served with process in this action in February 1982, Magri took the matter to Ben La Mar, a Redwood City attorney who had been retained on an unrelated case. La Mar agreed to represent her in this case. No appearance was made in the case and the default order was taken March 24, 1982, requiring Magri to pay $200 per month. In April 1982, La Mar told Magri of the order and said he would attempt to remedy the situation. In May, Magri made one $75 payment under the court order. For several months La Mar reassured her he was "taking care of everything" and she need not worry about the monthly bills from San Diego County. To stop the billings, in June La Mar told her to sign certain papers which included an assignment of any money received in the rescission action La Mar was pursuing for the Magris and an assignment of monthly support payments due her under the San Mateo

County Superior Court decree. In October 1982, Magri's physical condition was found to be permanent and stationary. Temporary disability payments were discontinued. As of February 1983, Magri was seeking rehabilitation services. Magri retained new counsel in this matter in January 1983.

In the trial court, Magri's motion to set aside the default and vacate the order entered by the default was based on extrinsic fraud due to her counsel's failure to file responsive papers and his later misrepresentations as to legal representation. She asserted she relied on La Mar's representations her interests were to be protected and was thus induced not to appear, relying on cases such as *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353-355 [66 Cal.Rptr. 240]. Magri also moved, contingent on the court's granting relief from default, for a change of venue based on the mandatory provisions of Code of Civil Procedure section 394, as well as on Code of Civil Procedure section 395, subdivision (a), making the defendant's place of residence the proper county for trial and Code of Civil Procedure section 396b.[2] As noted, the trial court denied all requested relief, though it set an amount of arrearages and modified the order to require no further monthly payments.

The major thrust of Magri's appeal is it was an abuse of discretion to deny the motion to set aside the default support order and thus not allow her to defend on the merits.

■ A motion for relief from entry of default or default judgment made within six months after entry of default or default judgment is governed by Code of Civil Procedure section 473, which provides that relief may be granted on a showing of mistake, inadvertence, surprise, or excusable neglect. (See *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892 [187 Cal.Rptr. 592, 654 P.2d 775].) The superior court also has inherent equity power, independent of Code of Civil Procedure section 473, to vacate a judgment obtained through extrinsic fraud (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700]). However, "[t]o the extent that the court's equity power to grant relief differs from its statutory power (Code Civ. Proc., § 473), the equity power must be considered narrower, not wider." (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d 347, 353, citing *Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, 857; see also

___

[2]Code of Civil Procedure section 394 provides, in part: "Whenever an action or proceeding is brought by a county . . . against a resident of another county, . . . the action or proceeding must be, on motion of either party, transferred for trial to a county . . . other than the plaintiff . . . and other than that in which the defendant resides . . . ."

In actions under section 11350, the transfer is required upon timely motion (*Morrison* v. *Superior Court* (1980) 100 Cal.App.3d 852 [161 Cal.Rptr. 169]; *Dorame* v. *Superior Court* (1978) 81 Cal.App.3d 70 [146 Cal.Rptr. 162]).

dissent of Bird, J., *Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d 892, 901-903.)

Thus, a "somewhat stronger showing is necessary" for relief under the inherent equitable power of the court than under Code of Civil Procedure section 473 (*Sybron Corp.* v. *Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896, 899, fn. 1 [143 Cal.Rptr. 306]).

■ " '[A] motion to set aside a default judgment is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse in the exercise thereof an appellate court will not disturb the order of the court below. . . .' " (*Palmer* v. *Moore* (1968) 266 Cal.App.2d 134, 142 [71 Cal.Rptr. 801], quoting *Waybright* v. *Anderson* (1927) 200 Cal. 374, 377 [253 P. 148].)

■ After reviewing Magri's declarations, other declarations in support of her motion and taking judicial notice of all other documents, the trial judge ruled Magri had not established a prima facie showing of extrinsic fraud or fulfilled her burden of making that showing. The facts here are somewhat similar to those in *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d 347, in terms of attorney neglect and misrepresentation of his activity. The attorney's inaction in that case, while more severe and repetitive than here, points up the fact the client was deprived of her right to have her position fully presented to the court. ■ Courts are loath to penalize a litigant on account of some omission on the part of his attorney, particularly where the litigant himself has acted promptly and relied on the attorney to protect his rights (*Stub* v. *Harrison* (1939) 35 Cal.App.2d 685, 689-690 [96 P.2d 979]). ■ While we realize the order here imposes no immediate burden on the defendant, it represents an adjudicated debt which undoubtedly weighs heavily on her. Under the circumstances disclosed in Magri's uncontradicted declaration, particularly with respect to her poor state of health and legal representation, we believe it was an abuse of discretion for the court not to set aside the default and fully hear the case on the merits.

■ This resolution of the default issue leaves the question of what is the proper court in which the section 11350 action should be tried.

The provisions of the Welfare and Institutions Code (§§ 11350, 11350.1, 11475.1 and 11484) give the County standing to sue on behalf of minor children when the children are recipients of aid, as here. The County, via its legal representative the district attorney, is responsible for promptly and effectively enforcing the support obligation under the circumstances attend-

ing this case by taking "appropriate action" (§ 11475.1).[3] Sections 11350, 11350.1 and 11484,[4] respectively, establish the procedure for enforcing the obligation of noncustodial parents to counties providing aid, particularly where there is an outstanding child support order under the Family Law Act. ■ When a Family Law Act child support order is in effect, the "appropriate action" is for the district attorney to apply to the Family Law

---

[3]As amended by the Statutes of 1977, chapter 1252, section 11475.1 provided, in part: "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have responsibility for promptly and effectively enforcing the obligation of parents to support their children . . . . The district attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance . . . ." (See now section as amended Stats. 1982, First Ex. Sess. 1981-1982, ch. 3, p. 6904, eff. Feb. 17, 1982, operative May 27, 1982.)

[4]Section 11350 provides: "In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the *noncustodial parent or parents shall be obligated to the county for an amount equal to*:

"(a) *The amount specified in an order for* the *support and maintenance* of such family *issued by a court of competent jurisdiction*; or in the absence of such court order,

"(b) The amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted; and

"(c) Such obligation shall be reduced by any amount actually paid by such parent during such period of separation or desertion for the support and maintenance of such family.

"*The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter.*

"The court may order the defendant to pay the county attorney fees and court costs, based on such defendant's reasonable ability to pay, in any proceeding brought by the county pursuant to this section.

"In making the determination of the defendant's reasonable ability to pay attorney's fees and court costs under this section, the court shall be limited to the following considerations:

"(a) The wealth and income of the defendant;

"(b) The current ability of the defendant to earn;

"(c) The age of the defendant." (Italics added.)

Section 11350.1 states: "Notwithstanding the provisions of any other statute, in any action brought by the district attorney for the support of a minor child or children, the action may be prosecuted in the name of the county on behalf of such minor child or children. The mother shall not be a necessary party in such action but may be subpoenaed as a witness. In an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support. Nor shall such support or paternity action be delayed or stayed because of the pendency of any other action between the parties. *Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an independent determination on the issue of support which shall supersede the order made pursuant to this section.*" (Italics added; as added by Stats. 1975, ch. 924.)

Section 11484 reads: "If aid has been applied for or granted to a child of parents who are divorced or legally separated, or who are engaged in a divorce or separate maintenance action which is pending, the district attorney may apply to the superior court in such action for an order directing either parent or both to show cause:

"(1) Why an order of support for the child should not be entered, or

"(2) Why the amount of support previously ordered should not be increased, or

"(3) Why the parent should not be held in contempt for his failure to comply with any order of support previously entered."

Act court under section 11484 for an order to show cause why a child support order should not be entered (*County of Los Angeles* v. *Ferguson* (1979) 94 Cal.App.3d 549 [156 Cal.Rptr. 565]). "The provisions of the Welfare and Institutions Code empowering plaintiff [County of Los Angeles] to enforce the obligation of parents to support their children make it clear that under such circumstances *the only way to establish another or different support obligation is by order to show cause in the Family Law Act proceedings.*" (*Id.* at p. 558; italics added.) Under *Ferguson,* interpreting the statutory scheme, a county lacks standing to initiate a new proceeding in the superior court in that county when there exists a Family Law Act order from a court of competent jurisdiction in another county providing for child support (*id.* at pp. 558-561).

Since the County of San Diego is prosecuting on behalf of the children of Magri receiving aid and there is outstanding a Family Law Act order for support from the Superior Court of San Mateo County, under *Ferguson, supra,* 94 Cal.Rptr. 549, the district attorney is required to use an order to show cause to obtain child support from Magri[5] as well as prompt reimbursement for public assistance expended for Magri's two children based on the underlying complaint pursuant to section 11350.

The problem, then, involves determining the effect of the district attorney's use of the order to show cause procedure in the San Diego County Superior Court when the preexisting order of the San Mateo Superior Court under the Family Law Act is in effect. Under the *Ferguson* holding, this is a matter of lack of standing to sue.[6] Section 11350 specifically authorizes the district attorney to bring the action "in the superior court of the county which provided aid." Thus, San Diego County is a proper county in which to file the action (see *Morrison* v. *Superior Court, supra,* 100 Cal.App.3d 852, 854 [161 Cal.Rptr. 169]). The *Ferguson* holding, however, necessarily implies the action is properly pursued to judgment only in the court which has in effect a Family Law Act order for child support. Thus, Magri's motion for change of venue to the Superior Court of San Mateo County should be granted.

We briefly note Magri's contention she was prejudiced by the failure to notice a request to enter default or to serve notice of granting a default

---

[5] A corollary of this conclusion is the district attorney is authorized to use the order to show cause procedure to obtain temporary child support pending the final determination of the section 11350 action. Thus, Magri's contention to the contrary is not meritorious.

[6] "[W]e conclude that plaintiff [County of Los Angeles] *lacks standing* to initiate a new proceeding *in Los Angeles County*" (94 Cal.App.3d at p. 561; italics added). A preexisting Family Law Act order of support against the father, defendant in the section 11350 action in Los Angeles Superior Court, had been entered by the Orange County Superior Court.

judgment is without merit. This is because the March 24, 1982, order by default was a temporary order, not a final judgment on the merits and therefore no request to enter default or service of notice of granting of default judgment is required. As of this appeal, no final judgment between the parties on the underlying complaint has been adjudicated or entered. The entry of default procedure of Code of Civil Procedure sections 585, subdivision (b), and 587 does not apply in such a case. Moreover, even assuming a default judgment was entered without proper application and affidavit, the legal result would be, simply, that the trial court erred in the exercise of its jurisdiction but this did not deprive it of jurisdiction to render the order (see *In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 100-102 [141 Cal.Rptr. 333]).

In light of the conclusions we have reached, it is unnecessary to discuss Magri's remaining contentions.

The order denying the motion to vacate the entry of default and the order entered is reversed and the superior court is directed to grant Magri's motion for change of venue to San Mateo County.

Brown (Gerald), P. J., and Wiener, J., concurred.

A petition for a rehearing was denied June 14, 1984, and respondent's petition for a hearing by the Supreme Court was denied August 15, 1984.